c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | CRIMINAL NO. 1:18-CR-00326-01 |
| VERSUS | JUDGE DRELL |
| DUSTIN O. THOMPSON, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Suppress (ECF No. 49) filed by Defendant Dustin O. Thompson ("Thompson"). Thompson seeks suppression of firearms and controlled substances seized from the search of 511 Renee Drive, Alexandria, Louisiana, and inculpatory statements made by him, on March 12, 2018. The United States of America (the "Government") opposes.

Because the Government does not intend to introduce the March 12, 2018 statements in its case-in-chief, Thompson's Motion to Suppress (ECF No. 49) should be DENIED IN PART AS MOOT as to the March 12, 2018 inculpatory statements. Because the totality of the circumstances establishes that Parnell's consent to search 511 Renee Street was freely and voluntarily given, Thompson's Motion to Suppress (ECF No. 49) should be DENIED as to the suppression of firearms and controlled substances seized from the search of 511 Renee Drive.

## I.    Background

In a four-count Superceding Indictment (ECF No. 32), Thompson was charged with distribution of fentanyl causing serious bodily injury (Count 1), possession with

1

intent to distribute fentanyl (Count 2), felon in possession of a firearm (Count 3), and possession of a firearm in furtherance of drug trafficking (Count 4).  ECF No. 32.

Thompson seeks suppression of the firearms and controlled substances[1] that are the subject of Counts 2, 3, and 4, on the basis that the search of 511 Renee Street was conducted without a warrant, and without his valid consent or the valid consent of Monica Parnell ("Parnell").  ECF No. 49 at 1.  Thompson asserts he was an occupant of the residence and that Parnell was the other adult resident.  *Id.*

Thompson also seeks suppression of inculpatory statements made by him on March 12, 2018.  *Id.*  He asserts the inculpatory statements were involuntarily made after he was advised of his rights and elected not to talk.  *Id.* at 1-2.  He further asserts the interview was coercive as he was admonished that the mother of his children would be arrested, and his children would be placed in the custody of Child Protective Services ("CPS").  *Id.* at 2.

Thompson argues the Court must determine whether Thompson's inculpatory statements were made voluntarily, whether or not exigent circumstances justified the warrantless search of 511 Renee Street, and whether or not Parnell's consent to search 511 Renee Street was voluntary.   ECF No. 49-1 at 3.

The Government opposes.  ECF No. 52.  The Government seeks denial based on Thompson's lack of standing to challenge the search of 511 Renee Street, as he has no expectation of privacy in the residence.  *Id.* at 4.  The Government further asserts Parnell's consent was freely and voluntarily given.   *Id.* at 4-6.   Finally, the

---

[1] *See* ECF Nos. 49-3, 49-4.

Government argues that suppression of Thompson's statements to law enforcement on March 12, 2018 is moot.  *Id.* at 6.

A video evidentiary hearing was held by consent of all parties.[2]  ECF No. 62. The Government produced the testimony of Alexandria Police Department ("APD") Narcotics Agent Gavin Shelton ("Officer Shelton") and Deputy U.S. Marshal Glenn Belgard ("Deputy Belgard"), as well as a "Permission for Search and Seizure" form (ECF No. 64-2 at 1) and a "Disclaimer of Ownership of Currency and/or Property" (ECF No. 64-2 at 2).  Thompson introduced the testimony of Parnell and a discovery video DVD (ECF No. 65) of excerpts of Thompson's March 12, 2018 interview.  This evidence established the following.

On March 12, 2018, Thompson is alleged to have sold a controlled substance to an individual who wanted to purchase heroin.  After overdosing on what he believed to be heroin, the individual crashed his vehicle into a sign in front of the APD. Investigators determined Thompson was the alleged suspect who sold the controlled substance to the individual and an undercover operation was conducted.  An undercover agent made phone calls to Thompson and scheduled a meet-up to buy the controlled substance.  The meet-up was scheduled to take place at a gas station off of Third Street, across from 511 Renee Street, where Thompson was allegedly residing.

Officers went to the gas station.  Thompson arrived to make the sale.  Officers did not find any narcotics on his person.  Thompson was arrested and taken to APD

---

[2] Witnesses were electronically sequestered during the hearing.

where officers interviewed him.  During the interview, Thompson made inculpatory statements.

After Thompson was arrested, and while his interrogation was being conducted, a second group of officers, including Officer Shelton and Deputy Belgard, went to 511 Renee Street.  Officer Shelton knocked on the door and was greeted by a young boy, age 12 to 15.  Officer Shelton advised who he was and asked if the boy's parent was home.  He stated his mother, Parnell, was not home.  Officer Shelton asked the boy to call Parnell.  Officer Shelton spoke with Parnell on the phone, advised who he was, and informed her there was a pending investigation.  He asked her to come to the residence to speak to him.

Parnell agreed to come back.  When she arrived, Officer Shelton advised her of the investigation involving Thompson.  Officer Shelton asked her about Thompson and asked whether he lived at the residence.  Parnell was very cooperative.  Parnell advised it was not unusual for Thompson not to come home and that he stayed two to three nights a week when he needed a place to stay.  Parnell stated he had clothing and items throughout the house.  She explained she had no knowledge of the sale of narcotics.  She stated that due to her work schedule she was never home and that, when she was, Thompson was not there.  Parnell advised that the house was her residence.  She stated that Thompson had items in the spare bedroom – a dayroom – and other items in a shared bedroom.

Parnell was never in custody and was never placed in handcuffs.  Officer Shelton advised of her *Miranda* rights.  She answered questions and freely spoke to

Officer Shelton. Officer Shelton read the entire Permission to Search and Seizure Form (ECF No. 64-2 at 1) to Parnell, allowing her to look at it while holding it in his hand.  Officer Shelton informed her she had the right to refuse consent as reflected in the form.  He instructed her to read the form, handed it to her to look at, witnessed her review the form, and witnessed her sign it.  Parnell never stated she could not understand or read it, and appeared to Officer Shelton to understand what she was signing.

Officer Shelton and other officers searched the residence without a warrant. Parnell was outside playing in the driveway with her child during the search.  Officers found a large amount of heroin or fentanyl in the dayroom, a large amount of ammunition, a rifle, and cash.  Officers also found a handgun located in the living room common area underneath a couch cushion, and another handgun underneath the mattress of the master bedroom.  Nothing separated the rooms from other parts of the house, such as a curtain or partition.

Following the search, Officer Shelton asked Parnell about the items located in the residence.  She appeared shocked and denied knowing about any items found in the residence.   Officer Shelton provided Parnell a Disclaimer of Ownership of Currency and/or Property form (ECF No. 64-2 at 2), disclaiming the $2,279.62 in currency found in the residence inside the closet with the suspected narcotics, rifle, and ammunition. Parnell stated the currency belonged to Thompson and did not know how it came to be in the house. Parnell signed the form, and Officer Shelton witnessed the form with his signature at the bottom.

Officer Shelton found Parnell to be shocked, but again cooperative. Parnell never asked them to stop or to not search her house. She never indicated she did not understand the form. Officer Shelton claims he never threatened to arrest Parnell. He never heard anyone else threaten to arrest her. He was with Parnell from the time of her arrival until the search and after the search. He never threatened to take her children away, and never heard anyone else do so. No firearms were drawn. Parnell asked if she could leave and Officer Shelton advised she could leave any time she wanted. Officer Shelton advised of her *Miranda* rights when he obtained the consent to search and again when he took a taped statement.

## II.  Law and Analysis

### A.  Standards governing the Motion to Suppress.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. As the proponent of a motion to suppress, Thompson has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights. *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2019). However, as in this case, the Government bears the burden of proof that the search was valid when the search is conducted without a warrant. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). Generally, "[t]he government may not use evidence obtained in violation of the Fourth Amendment's prohibition against unreasonable searches and

seizures to prove a defendant's guilt at trial." *United States v. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995).

**B.** **Suppression of Thompson's statements to law enforcement on March 12, 2018 is moot.**

Thompson seeks to have inculpatory statements made on March 12, 2018 excluded from evidence. ECF No. 49. Thompson contends involuntary inculpatory statements were made after invoking his right to remain silent and his right to counsel. ECF No. 49-1 at 5. He further asserts the statements were made under APD's threat to arrest Parnell and place Thompson's children in state custody. *Id.* He contends that his inculpatory statements should be inadmissible at trial. *Id.*

The government bears the burden of proof, by a preponderance of the evidence, that a defendant's statements were voluntary. *United States v. Reynolds*, 367 F.3d 294, 297-98 (5th Cir. 2004) (per curiam). A statement is voluntary if, "under the totality of the circumstances, the statement is 'the product of the accused's free and rational choice.'" *Id.* at 298 (quoting *United States v. Garcia Abrego*, 141 F.3d 142, 170 (5th Cir. 1998)). A statement cannot be involuntary in the absence of coercive police activity. *See Garcia Abrego*, 141 F.3d at 170 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). Suppression of inculpatory evidence is an extraordinary remedy. *See Hudson v. Michigan*, 547 U.S. 586, 591 (2006).

Here, however, the Government does not intend to introduce in its case-in-chief any of the statements made by Thompson in response to questioning during the

March 12, 2018 interview. ECF No. 52 at 6-7.[3] Thus, the Government essentially agrees to the remedy sought by Thompson. Article III requires a live "case or controversy" to prevent federal courts from deciding cases (or claims) that are moot. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969). Given the Government's concession, Thompson's Motion to Suppress (ECF No. 49) his March 12, 2018 inculpatory statements should be DENIED AS MOOT. *See United States v. Wright*, 2018 WL 4956109, at*2 (M.D. La. Oct. 12, 2018) (denying as moot defendant's motion to suppress statements the Government did not seek to introduce as evidence); *see also United States v. Williams*, 2015 WL 5970326, at *5 (E.D. La. Oct. 14, 2015) (denying as moot in part defendant's motion to suppress a statement the Government stated it did not seek to introduce as evidence).

### C. <u>Thompson has standing to challenge the search as he had a reasonable expectation of privacy at Parnell's residence.</u>

Thompson asserts that as an overnight guest he had a sufficient expectation of privacy. ECF No. 49-1 at 4. After appointment of counsel on Thompson's behalf, Ms. Patricia Cumbo Pitchford ("Pitchford") interviewed Parnell. ECF No. 49-1 at 2-3. Parnell told Pitchford she was the lessee of 511 Renee Street, and that Thompson stayed there, occasionally. *Id.* Parnell also stated that Thompson kept belongings in the spare bedroom. *Id.*

---

[3] The Government states it does intend to introduce the statements made by Thompson on December 3, 2018, when he was arrested on a federal arrest warrant. ECF No. 52 at 7. However, Thompson does not seek suppression of the December 3, 2018 statements in this motion. Thus, the Court need not address the December 3, 2018 statements.

To claim protection under the Fourth Amendment, a defendant must have "a legitimate expectation of privacy in the invaded place." *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). A defendant bears the "burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 130 n.1 (citations omitted). To establish standing to challenge the search, a defendant must demonstrate: (1) "an actual, subjective expectation of privacy with respect to the place being searched or items being seized;" and (2) that the expectation of privacy is one society recognizes as objectively reasonable. *Iraheta*, 764 F.3d at 461 (citations omitted).

"The 'factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjection expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.'" *United States v. Gomez*, 276 F.3d 694, 697-98 (5th Cir. 2001) (quoting *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981)). "No one circumstance has a decisive 'talismanic' significance." *Id.*

"[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998); *see also Minnesota v. Olson*, 495 U.S. 91, 98 (1990) (holding that an overnight guest has a reasonable expectation of

privacy in his host's home, sufficient to "enable him to be free in that place from unreasonable searches and seizures"). A defendant's "expectation must be 'personal[ ]' and 'reasonable,' and it must have a 'source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *Hernandez,* 647 F.3d at 219 (alteration in original) (quoting *Carter,* 525 U.S. at 88). "Standing does not require an ownership interest in the invaded area." *Hernandez,* 647 F.3d at 219.

Here, the evidence shows Thompson stayed a few days per week at Parnell's 511 Renee Street residence. The meet-up with the undercover agent was scheduled to take place across from 511 Renee Street where officers believed Thompson was staying and using as his home. Although no clear evidence established that Thompson was a full-time occupant of the home, evidence shows Thompson stayed in a spare bedroom, identified as a dayroom, where he kept some of his belongings. He also stayed with Parnell in the master bedroom, where he kept belongings. Parnell testified that he lived there. It is clear he had unencumbered access to the home when Parnell was working and not at home. And it is reasonable to assume he had a key to the home. She testified that he at one time he had a key but could not remember if he still had one.

Parnell testified that when she left home for work on March 12, 2018, Thompson was at her residence and had stayed the night before. Additionally, it is reasonable to assume Thompson had authority to exclude other persons from the residence where he stayed two to three days per week with Parnell and his two

10

children. Clearly, he had a subjective expectation of privacy with respect to 511 Renee Street. The evidence establishes that Thompson was an overnight guest such that he had a legitimate expectation of privacy at 511 Renee Street.  Thus, Thompson has standing to assert a Fourth Amendment challenge to the search of 511 Renee Street.

> ### D.    Parnell's consent to search her residence was freely and voluntary given.

Thompson argues Parnell only signed the consent to search the residence after being threatened with arrest and the loss of custody of her minor children. ECF No. 49-1 at 4.  Thompon cites *Lynumn v. Illinois*, 372 U.S. 528 (1963), wherein the United States Supreme Court held that the defendant's confession, made after police told her she could lose state financial aid for her children and the state could take her children, if she did not cooperate, was not voluntary but coerced.  *Id.* at 4-5. Thompson contends this is exactly what APD did to Parnell, arguing that the APD used the same tactics with Thompson as shown on video.  *Id.* at 5.

"A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment."  *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001); *see also United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). Exigent circumstances include the removal or destruction of evidence, the hot pursuit of a suspect, and the immediate risk to the safety of officers or others.  *See United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993).

Here, neither probable cause nor exigent circumstances were asserted by the Government as justifying the warrantless entry into and search of 511 Renee Street. Rather, the Government contends that Parnell consented to the search.

To satisfy the consent exception, the Government "must prove, 'by a preponderance of the evidence,' that 'consent to the search was freely and voluntarily given.'" *United States v. Santiago*, 410 F.3d 193, 198-199 (5th Cir. 2005) (quoting *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002)). Voluntary consent may be provided by a person with authority to grant such consent. *United States v. Gonzales*, 508 Fed.Appx. 288, 290 (5th Cir. 2013) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Valid consent from a third party, rather than from the person whose property was seized, requires proof that "the third party had either actual or apparent authority to consent." *Id.* (citing *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997), *overruled on other grounds*, *United States v. O'Brien*, 560 U.S. 218 (2010)); *see also United States v. Matlock*, 415 U.S. 164, 171 & n.7 (1974) (consent to warrantless search by a third party is valid when that third person possesses common authority over or other sufficient relationship, that is, "mutual use of property by persons generally having joint access or control for most purposes," to the premises or effects sought to be inspected).

Parnell testified she has a written lease with the owner of the property, and that she and her children are on the lease. Parnell also testified that Thompson resided in the home with her days at a time, that they were in a romantic relationship, and that he is the father of her two children. Officer Shelton testified that he asked

Parnell if she had access to the entire house, and she informed him it was her residence. Nothing separated the rooms from other parts of the house. Thompson does not contest Parnell's authority to consent.

Additionally, the Government produced a consent to search 511 Renee Street signed by Parnell. ECF No. 52-1. It is undisputed that Parnell signed the form. ECF No. 49-1. Parnell testified she gave permission. Rather, Thompson asserts Parnell's signed consent was coerced and not freely and voluntarily given. ECF No. 49-1.

"The voluntariness of consent is a question of fact to be determined from a totality of the circumstances." *United States v. Soriano*, 976 F.3d 450, 455 (5th Cir. 2020) (citing *Santiago*, 410 F.3d at 199 (internal quotation marks and citation omitted)). To evaluate the voluntariness of consent, we consider the following six factors: "(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found." *Id.*; *see also United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) (applying factors to a third party). Consent may not be "the product of duress or coercion, express or implied," or the mere "acquiescence to a claim of lawful authority." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980) (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)). All the factors are relevant, but no one factor is dispositive or controlling. *See United States v. Timoteo*,

353 Fed.Appx. 968, 973 (5th Cir. 2009) (citing *Santiago*, 410 F.3d 193, 199 (5th Cir. 2005).

As to the first factor, Officer Shelton testified that Parnell came to the residence after her son called her.  He testified that she had normal anxiety when she arrived and then relaxed "a ton" after he explained everything.  He stated that she was playing with her child and that 90% of the conversation took place in her driveway.  Officer Shelton testified Parnell was never in custody and was never placed in handcuffs.  He further stated he never threatened her arrest and never heard anyone else threaten arrest.

Officer Shelton further testified that during the search she stayed outside and played in the driveway with her kid.  He stated Parnell was free to leave and was very compliant with the officers.  He testified Parnell did ask if she could leave and he told her she could leave any time she wants.  He did not know whether she left and came back while the search was being conducted. Officer Shelton stated he was with Parnell from the time of her arrival until consent was given and the search was conducted. Officers were in front of the house, but no one was assigned to sit with her.  During the search, she walked around, talked on the phone a bit, and played outside with her child.  Officer Shelton estimated that approximately six to seven officers were present when Parnell arrived.  He did not draw or brandish any weapons, and saw no one else do so.[4]

---

[4] The Fifth Circuit has "held consent to be voluntary even in the face of greater shows of force than . . . seven officers, some in uniform and none with weapons drawn or displaying force beyond their presence in numbers." *United States v. Solis*, 299 F.3d 420, 438 (5th Cir. 2002).

Deputy Belgard's testimony was consistent with Officer Shelton's. Deputy Belgard testified that when Officer Shelton explained the situation to Parnell she was angry at Thompson and cooperative with Officer Shelton. Deputy Belgard testified he observed her speaking with Officer Shelton directly. He stated that after signing the consent he believes she possibly left and came back. Deputy Belgard also testified she was free to leave.

Parnell testified that when she arrived home, Officer Shelton was outside of the house with her son and that four officers came outside of her house. Deputy Belgard testified they conducted a cursory sweep clearing the home for officer safety, and did not lift any pillows or search anything. Parnell testified that officers would not let her enter her home until 15 to 20 minutes after arriving. Parnell testified she was not placed in handcuffs. While there is contradictory testimony, the first factor weighs in favor of Parnell's custodial status being voluntary.

Regarding the second factor, Thompson submits excerpts from his March 12, 2018 interrogation as evidence of coercive police procedures relating to Parnell's consent to search 511 Renee Street. ECF Nos. 49-1 at 3-5, 65.[5] The undersigned has

---

[5] The excerpts from the March 12, 2018 interview were introduced without objection from the Government. However, the Government asserts they are irrelevant. The Government does not intend to introduce in its case-in-chief any inculpatory statements from Thompson's March 12, 2018 interview. ECF No. 52 at 6-7. Thompson asserts the evidence is relevant to Parnell's testimony that she was threatened, bearing on the voluntariness of her consent to search 511 Renee Street. Given that suppression of the excerpts of inculpatory statements is moot – and given the Government's lack of objection – the Court considers the March 12, 2018 excerpts for the limited purpose of considering the totality of the circumstances of the voluntariness of Parnell's consent.

reviewed and considered the excerpts to the limited extent of evaluating allegations of coercive police procedures.

The evidence shows Parnell voluntarily came to the residence after being called by officers. She testified she recognized the permission. Parnell remembered being read her *Miranda* rights. She did not say she wanted to remain silent, but instead said nothing. She testified the permission form was not read to her and did not hear the officer reading it. She admitted she signed this document after being read her *Miranda* rights. None of the form was filled out when she signed it. She testified she did not read the form. And she agreed she was never placed in handcuffs. The Government had her read into the record the statement immediately above her signature, that the "written permission is being given without threats or promises of any kind." ECF No. 52-1 at 1. But before the search, she stated she did not read it.

Parnell testified that two officers threatened her with arrest and with CPS taking her kids. Parnell then testified that she gave permission to the search because officers called CPS and threatened to take her kids away. And had she not been told these things she would not have given permission to search.

Deputy Belgard testified he never heard anyone threaten to take away her children or threaten her state financial aid. Informing a person of the consequences of refusing consent is not a threat if such consequences are merely the legal ramifications of a person's actions. *See United States v. Roberts*, 86 F.Supp.2d 678, 687-88 (S.D. Tex. 2000). However, even assuming those same tactics, though undesirable, were used in asking for Parnell's consent, it does not overcome Parnell's

16

voluntary consent. Further, even if officer told Parnell that she potentially could be arrested or that CPS could be called, the Court finds the evidence does not establish coercion. Officer Shelton and Deputy Belgard both denied coercive tactics, threats, or other indicators of involuntariness. Parnell cooperated voluntarily.

Again, the remaining factors weigh in favor of consent. The bulk of the evidence indicates that Parnell fully cooperated with officers. She also testified she was read her *Miranda* rights before signing the consent form. Additionally, the evidence shows Parnell believed no drugs, weapons, or cash would be found in the residence. She testified she told officers at the scene she did not know there were guns and drugs in her house and stands by that statement. She testified that she did not know anything would be found when officers searched the house. An awareness or belief that no incriminating evidence will be found weighs in favor of a finding of voluntariness. *See Soriano*, 976 F.3d at 458 (citing *United States v. Shabazz*, 993 F.2d 431, 438-39 (5th Cir. 1993)).[6]

## III.   Conclusion

Because the Government does not intend to introduce the March 12, 2018 statements in its case-in-chief, and because the totality of the circumstances establishes that Parnell's consent to search 511 Renee Street was freely and voluntarily given;

---

[6] After the search, she signed the disclaimer of ownership of the money. ECF No. 62-2 at 2.

IT IS RECOMMENDED that Thompson's Motion to Suppress (ECF No. 49) should be DENIED IN PART AS MOOT as to the March 12, 2018 inculpatory statements.

IT IS FURTHER RECOMMENDED that Thompson's Motion to Suppress (ECF No. 49) should be DENIED as to the suppression of firearms and controlled substances seized from the search of 511 Renee Drive.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Tuesday, February 2, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE